## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LAW OFFICE OF BRENT GAINES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HEALTHPORT TECHNOLOGIES, LLC,<br><br>Defendant. | No. 3:16-cv-00030-SMY-SCW<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS** |

Plaintiff the Law Office of Brent Gaines ("Plaintiff") respectfully submits the following opposition to the motion to dismiss by defendant HealthPort Technologies, LLC ("Defendant" or "HealthPort"). (*See* Def.'s Mot. Dismiss, ECF No. 8 (the "Motion" or "Mot.").)

### INTRODUCTION

Defendant is in the business of charging fees for services never rendered. Plaintiff is one of the entities on which Defendant has imposed the bogus fees, and it has done so on more than one occasion. Moreover, Defendant has threatened Plaintiff with legal action and the wrath of a collection agency over the fees—thereby forcing Plaintiff to expend energy and money in fighting the bogus fees, including, but not limited to, hiring counsel as well as paying court costs such as filing fees. Finally, as alleged in the Complaint, Plaintiff is not the only entity with respect to which Defendant has engaged in this alleged misconduct. Indeed, there are numerous lawsuits pending against Defendant for the very same alleged misconduct at issue here. *See, e.g.*, *Law Offices of Henry E. Gare, P.A. v. HealthPort Technologies, LLC*, Case No. 16-2011-CA-010202-XXXX-MA (Fla. 4th Jud. Cir. Ct. filed Dec. 8, 2011); *Goldberg v. HealthPort Technologies LLC*, Case No. L-001421-14 (N.J. Super. Ct. Essex Cty. filed Mar. 4, 2014).

Instead of confronting the allegations of misconduct, Defendant has attempted an end-run

around liability to Plaintiff and the other class members. Specifically, only after Plaintiff had hired counsel and then filed a lawsuit did Defendant make a settlement offer that would release Plaintiff (but not absent class members) from the fees Defendant charged it. Despite rejection of the settlement offer, Defendant now claims the case is moot and must be dismissed. This tactic by Defendant, however, does not absolve it for a number of reasons.

*First*, earlier this year, the United States Supreme Court in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016) ("*Campbell*"), ruled that such a pick-off attempt of a named plaintiff as that engaged in here did not moot the case or otherwise divest the court of jurisdiction of the matter. That rule governs here and mandates denial of Defendant's motion.

*Second*, even if the Supreme Court had not rendered the rule in *Campbell*, the rejected settlement offer does not cover all of Plaintiff's claims. Notably, the settlement offer does not release the fees at issue in the Complaint; does not provide payments for costs or other expenses Plaintiff has incurred in fighting Defendant's bogus fees that Plaintiff is entitled to under his claims; provides no injunctive relief whatsoever; and does not extend to any third party, such as collection agencies, that might have an interest in the contested fees.

Defendant's remaining arguments are equally without merit. First, Defendant incorrectly argues that Plaintiff lacks standing to seek injunctive relief. Defendant is wrong because Plaintiff, due to the nature of its business, regularly orders medical records and, as a result, will likely become subject again and again to Defendant's challenged fees, as it already has in the past.

Defendant also argues that because Plaintiff has refused to pay the challenged fees, it has not suffered actual damage. This is wrong; the courts have recognized repeatedly that a debt or other obligation constitutes actionable harm. That result is underscored here by the tactics Defendant utilized in threatening legal action and in the unleashing of collection agencies on

Plaintiff to collect the fees.

Defendant argues the Illinois and Missouri statutes governing charges for provision of medical records allow the charges at issue. As stated in the Complaint, the plain language of the statutes belies Defendant's arguments.

Finally, Defendant argues Plaintiff cannot state claims for violation of Georgia law. Defendant argues there is no likelihood of confusion to support a claim under Georgia's Uniform Deceptive Trade Practices Act, GA. CODE § 10-1-370 *et seq.* (the "GUDTPA"), because the charges at issue are clear. Defendant's conduct misleads as to the legality of the charges, however, and the GUDTPA also covers illegal and unfair trade practices. Defendant argues conflict-of-law principles prevent Plaintiff from bringing Georgia law claims, but Plaintiff can bring claims in the alternative for violation of all of the statutes at issue. Also, tellingly, Defendant does not even try to carry its burden of identifying an outcome-determinative conflict between Plaintiff's Georgia claims and its claims for violation of Illinois or Missouri law. And, Defendant argues Plaintiff cannot bring its claim for violation of Georgia's Fair Business Practices Act of 1975, GA. CODE § 10-1-390 *et seq.* (the "GFBPA"), on a class-wide basis due to language in one of the act's provisions. Rule 23, however, controls over conflicting state law, and Defendant simply ignores Supreme Court and federal appellate authority that so holds.

## STATEMENT OF RELEVANT FACTS

HealthPort specializes in the provision of medical records on behalf of doctors and hospitals throughout the United States, including in Illinois and Missouri. (Compl. ¶¶ 1-2, 44, ECF No. 1-1.) HealthPort charges attorneys and law firms a "Basic Fee" in connection with medical records requests it services, when it does not, in fact, copy, retrieve, or furnish any medical records. (*Id.* ¶¶ 4-5, 46, 48.) The "Basic Fees" HealthPort charges in these circumstances are $20 in Illinois

and $22.82 in Missouri. (*Id.* ¶¶ 4-5, 46, 48.) Illinois and Missouri statutes do not allow for the charges. 735 ILCS 5/8-2001(d); MO. STAT. § 191.227.2. (*See also* Compl. ¶¶ 6-11.)

Plaintiff is a law firm that routinely makes medical records requests to doctors and hospitals in Illinois and Missouri on behalf of its clients, many of whom do not know when their last medical treatment occurred and many of whom suffer from mental impairments that negatively affect their memories. (Compl. ¶¶ 16-22.) HealthPort often services the requests. (*Id.* ¶¶ 23, 40-41.) On numerous occasions, HealthPort has charged Plaintiff when it has not actually copied, retrieved, or furnished medical records to Plaintiff. (*Id.* ¶¶ 24-38.) Plaintiff has refused to pay charges that are illegal under Illinois and Missouri law. (*Id.* ¶¶ 27, 30, 34, 37, 39.) HealthPort has sent Plaintiff delinquency notices requesting payment of the charges, each of which states that HealthPort may forward Plaintiff's account to a collection agency or take legal action. (*Id.* ¶ 28-29, 35-36.)

On behalf of a class of attorneys and law firms, an Illinois subclass, and a Missouri subclass (Compl. ¶¶ 50-58), Plaintiff asserts violations of the GUDTPA, the GFBPA, Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA"), and the Missouri Merchandising Practices Act, MO. STAT. § 407.010 *et seq.* (the "MMPA"). (Compl. ¶¶ 59-116.)

## ARGUMENT

### I.  THE COURT HAS SUBJECT MATTER JURISDICTION OVER ALL OF PLAINTIFF'S CLAIMS.

Defendant argues Plaintiff lacks Article III standing to seek injunctive or monetary relief. As set forth below, Defendant is wrong.[1]

---

[1] Additionally, in removing this action from state court to federal court, Defendant represented that federal subject matter jurisdiction exists. For this reason, Defendant's arguments against federal subject matter jurisdiction are disingenuous, and under the doctrine of judicial estoppel, Defendant should not now be allowed to argue that federal subject matter jurisdiction does not exist. *See Oliver v. Mona Vie, Inc.*, No. 4:11-CV-04125, 2012 WL 1965613, at *2 (W.D. Ark. May 31, 2012) ("[A]s a general matter, courts are not friendly toward parties scheming to alter jurisdiction.").

**A.** **Defendant's Unaccepted Settlement Offer Does Not Deprive Plaintiff of Standing under Article III of the United States Constitution.**

**1.** **Under the United States Supreme Court's Decision in *Campbell-Ewald Co. v. Gomez*, an Unaccepted Settlement Offer Does Not Moot an Action or Deprive the Plaintiff of Article III Standing.**

Article III standing exists where a plaintiff can show: (1) the plaintiff suffered an "injury in fact," *i.e.*, a concrete and particularized invasion of a legally protected interest that is actual or imminent; (2) a causal connection between the injury and the defendant's action; and (3) a likelihood that the injury can be redressed if the court finds in the plaintiff's favor. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Article III standing is easily met—"[a]ll that a plaintiff need show to establish standing to sue is a reasonable probability . . . of suffering tangible harm unless he obtains the relief that he is seeking in the suit." *Hoover v. Wagner*, 47 F.3d 845, 847 (7th Cir. 1995) (citations omitted).

Here, Defendant first argues its attempt to pick off the named Plaintiff in this class action divests the court of Article III jurisdiction. (*See* Mot. 6-9.) However, courts are especially wary of attempts to force mootness on an unwilling plaintiff by the defendant taking unilateral, voluntary action. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.").

Moreover, Defendant's position is wrong, as recent governing authority by the United States Supreme Court—*Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016)—contradicts it on this very issue.

In *Campbell*, plaintiff Jose Gomez alleged that the defendant, Campbell-Ewald Company ("Campbell"), violated the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, by sending him unwanted text messages. *Campbell*, 136 S. Ct. at 667. Plaintiff brought a class action

seeking treble damages and an injunction on behalf of the class members. *Id.*

In response to the complaint, Campbell offered to settle the plaintiff's individual claim. *Id.* at 667-68. When plaintiff Gomez pressed on with his class action lawsuit, Campbell moved to dismiss. *Id.* at 668. In its motion to dismiss, Campbell argued that its settlement offer mooted the plaintiff's claim and thereby deprived him of Article III standing, requiring dismissal pursuant to Federal Civil Procedure Rule 12(b)(1) for lack of subject matter jurisdiction. *Id.* Campbell also argued that Gomez's failure to move for class certification before his individual claim became moot caused the putative class claims to become moot as well. *Id.*

The Supreme Court rejected this argument and held that an unaccepted offer of settlement—such as Defendant's unaccepted settlement offer here—does not moot a plaintiff's claim in the class action context or otherwise deprive the plaintiff of Article III standing. *Campbell*, 136 S. Ct. at 670 ("[W]e hold that Gomez's complaint was not effaced by Campbell's unaccepted offer to satisfy his individual claim.").

First, the Supreme Court noted that "[a] case becomes moot . . . 'only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Id.* at 668 (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 132 S. Ct. 2277, 2287 (2012)). Accordingly, "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, ***the case is not moot***." *Id.* (quoting *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013)) (emphasis added).

The Supreme Court then held that "[u]nder basic principles of contract law, [a] settlement bid and Rule 68 offer of judgment, once rejected, [has] no continuing efficacy." *Id.* at 670. Moreover, where a plaintiff rejects a settlement bid and the defendant continues to deny liability, the plaintiff "gain[s] no entitlement to the relief . . . previously offered." *Id.* (citing *Eliason v. Henshaw*, 17 U.S. 225, 228 (1819) ("It is an undeniable principle of the law of contracts, that an

offer of a bargain by one person to another, imposes no obligation upon the former, until it is accepted by the latter[.]")).

As the Supreme Court summed it up: "In short, with no settlement offer still operative, the parties remained adverse; both retained the same stake in the litigation they had at the outset." *Campbell*, 136 S. Ct. at 670-71.

*Campbell* applies to the facts here. Just as in *Campbell*, the settlement offer here was not accepted, a fact underscored by the continued litigation. Accordingly, because "the parties remain adverse," Plaintiff has Article III standing, and Defendant's argument that its unaccepted settlement offer moots Plaintiff's case must therefore be denied. *Id.*; *see also Fitzhenry v. Career Educ. Corp.*, No. 14-CV-10172, 2016 WL 792312, at *4 (N.D. Ill. Mar. 1, 2016) ("[A] settlement offer that may satisfy Plaintiff's individual demands *does not moot his case*." (emphasis added)).

Finally, it cannot be overstated the sea change that *Campbell* and the logic of Justice Kagan's opinion in the preceding matter of *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1532-37 (2013) (Kagan, J., dissenting), have caused; they have defused the impact of offers of settlement in attempts to moot Article III standing in class actions. As the United States Court of Appeals for the Seventh Circuit stated in *Chapman v. First Index, Inc.*, 796 F.3d 783 (7th Cir. 2015):

> We acknowledge that many courts, this one included, have applied the label "moot" when a plaintiff declines an offer that would satisfy his entire demand. *See, e.g.*, *Damasco v. Clearwire Corp.*, 662 F.3d 891, 895 (7th Cir. 2011); *Thorogood v. Sears, Roebuck & Co.*, 595 F.3d 750, 752 (7th Cir. 2010); *Rand v. Monsanto Co.*, 926 F.2d 596, 598 (7th Cir. 1991)[.] . . . ***But Justice Kagan's dissent in <u>Genesis Healthcare Corp.</u> . . . shows that an expired (and unaccepted) offer of a judgment does not satisfy the Court's definition of mootness, because relief remains possible. . . . We overrule <u>Damasco</u>, <u>Thorogood</u>, <u>Rand</u>, and similar decisions to the extent they hold that a defendant's offer of full compensation moots the litigation or otherwise ends the Article III case or controversy.***

*Chapman*, 796 F.3d at 786-87 (emphasis added).

Indeed, in *Campbell*, the Supreme Court rejected the type of reliance on the case of *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721 (2013) ("*Already*"), that Defendant asserts here. As stated in *Campbell*, "'voluntary cessation' is generally inadequate to moot a claim." *Campbell*, 136 S. Ct. at 671 n.5 (citation omitted). In *Already*, the counter-defendant filed a covenant not to sue that the Supreme Court held afforded blanket protection from future trademark infringement, thereby mooting the counter-plaintiff's claims, which were for declaratory relief only. *Id.*; *see also Already*, 133 S. Ct. at 725-26. In *Campbell*, however, the Supreme Court held that, as is the case here against HealthPort, "[the defendant's] revocable offer [is] far from providing [the plaintiff] the relief sought in his complaint." *Campbell*, 136 S. Ct. at 671 n.5. Moreover, the Supreme Court rejected a broad reading of *Already* and similar cases, noting that such an "approach would place the defendant in the driver's seat. . . . The Court reject[s] this gambit." *Id.* at 672.

It is also significant that there were no class action allegations in *Already*, a trademark dispute between two private parties. *Campbell*, 136 S. Ct. at 671 n.5. Consequently, the covenant not to sue in *Already* did not, and could not, give rise to the possibility that a party would not have the opportunity to seek class certification, unlike the case here, where HealthPort seeks to eliminate the possibility of Plaintiff certifying the putative class. *Id.* at 672.

The decision in *Brady v. Basic Research, L.L.C.*, No. 213CV7169SFJARL, 2016 WL 462916 (E.D.N.Y. Feb. 3, 2016), is additional persuasive authority. In *Brady*, the defendants, citing *Campbell*, sought permission under Rule 67 to deposit funds with the clerk of the court that the defendants contended were consistent with the Rule 68 offer of judgment the defendants had previously made to the plaintiffs. *Brady*, 2016 WL 462916, at *1. After explaining the purpose of Rule 67 and the holding in *Campbell*, the court denied the defendant's motion, stating as follows:

> As Defendants seek Rule 67(a) permission to deposit funds into court to moot this case and not to relieve themselves of the burden of administering an asset, and given

> the Supreme Court's directive that "a would-be class representative with a live claim of her own *must be accorded a fair opportunity* to show that certification is warranted," the Court finds that granting the Defendants' Rule 67(a) Motion is not warranted.

*Id.* at *2 (quoting *Campbell*, 136 S. Ct. at 672) (emphasis in original).

Here as in *Brady*—and in sharp contrast to *Already*—Plaintiff "*must be accorded a fair opportunity* to show that certification is warranted," and the Court should reject Defendant's unilateral attempt to extinguish that opportunity. *Id.* (emphasis in original). Based upon *Campbell* and *Brady*, this Court should reject Defendant's gambit and deny its Motion, as Plaintiff has standing to pursue its claims.

### 2. The Unaccepted Settlement Offer Does Not Cover All of the Claims Asserted in the Complaint.

Even if *Campbell* did not apply here (which it does), Defendant's settlement offer does not cover all of Plaintiff's claims. (*See* Mot., Ex. 1, ECF No. 8-1.) Notably, it does not mention fees—let alone the "Basic Fees" at issue here. (*Id.*) Nor does it provide for injunctive relief or payment of the costs and fees that Plaintiff has incurred (*id.*) and is due under the claims at issue here, *see, e.g.*, GA. CODE § 10-1-373(b); GA. CODE § 10-1-399(d); 815 ILCS 505/10a.

Moreover, the definition of the releasing party does not extend to third parties that may have an interest in the fees at issue, including but not limited to hospitals or collection agencies. (Mot., Ex. 1.) In the release, HealthPort continues to deny that it has "any fault, guilt, or liability whatsoever." (*Id.*) HealthPort's continuing denial of liability in the settlement offer shows adversity between the parties persists. *Campbell*, 136 S. Ct. at 666. Indeed, the Supreme Court rejected the strategy of denying liability and, at the same time, attempting to moot an action through a settlement in *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18 (1994), and it did so again in *Campbell*. *Campbell*, 136 S. Ct. at 672.

**B.      Plaintiff Has Article III Standing to Pursue Injunctive Relief.**

"An allegation of future injury may suffice [to satisfy the injury-in-fact requirement of Article III standing] if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1150 n.5 (2013)) (some internal quotation marks omitted); *see also Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 693 (7th Cir. 2015).

Here, Plaintiff's Complaint establishes that the threat of repeated future injury is credible and well-founded, not chimerical or wholly speculative. Significantly, the alleged injury has occurred repeatedly in the past. *Susan B. Anthony List*, 134 S. Ct. at 2345 (holding that threat of future challenged activity was "substantial" where there was a history of past challenged activity). Plaintiff alleges its clients include individuals it represents before the United States Social Security Administration, which "routinely" requires Plaintiff to submit evidence of the clients' recent medical treatment. (Compl. ¶¶ 17-18.) Plaintiff also alleges "many" of its clients do not know when their last medical treatment occurred. (*Id.* ¶¶ 19-20.) Plaintiff alleges HealthPort is "often" the entity that responds to Plaintiff's medical records requests. (*Id.* ¶ 23.) The Complaint documents in detail two instances in which HealthPort charged Plaintiff allegedly illegal fees (*id.* ¶¶ 24-37), and it states there have been "numerous" other similar instances (*id.* ¶ 38). Finally, Plaintiff alleges it "spends thousands of dollars per year on medical records it obtains from HealthPort." (*Id.* ¶ 41.) These factually detailed allegations documenting repeated injury and setting out a pattern of conduct that very likely will occur again are sufficient to establish standing to pursue injunctive relief. *Susan B. Anthony List*, 134 S. Ct. at 2342-46; *Smith v. City of Chicago*, No. 15 C 3467, 2015 WL 6859299, at *5 (N.D. Ill. Nov. 9, 2015) ("[T]he 'possibility of recurring injury ceases to be speculative when actual repeated incidents are documented.'").

Citing the Supreme Court's decision on summary judgment in *Clapper v. Amnesty International USA*, Defendant argues Plaintiff lacks standing to pursue injunctive relief because, according to Defendant, the Complaint does not describe a "certainly impending" injury. (Mot. 9 (quoting *Clapper*, 133 S. Ct. at 1143).) Defendant is wrong.

As an initial matter, "*Clapper* does not . . . foreclose any use whatsoever of future injuries to support Article III standing." *Remijas*, 794 F.3d at 693. In holding the plaintiffs' injuries were not "certainly impending," *Clapper* "did not jettison the 'substantial risk' standard." *Remijas*, 794 F.3d at 693; *see also Susan B. Anthony List*, 134 S. Ct. at 2341; *Clapper*, 133 S. Ct. at 1150 n.5.

In *Clapper*, the plaintiffs challenged the constitutionality of the FISA Amendments Act of 2008, 122 Stat. 2436 (the "FISA Amendments Act"), which created "a new framework under which the Government [could] seek [judicial] authorization of certain foreign intelligence surveillance targeting the communications of non-U.S. persons located abroad." *Clapper*, 133 S. Ct. at 1144. The plaintiffs believed that, due to the nature of their work, "some of the people with whom they exchange[d] foreign intelligence information [were] likely targets of surveillance." *Id.* at 1145. The plaintiffs claimed there was "an objectively reasonable likelihood that their communications [would] be acquired under [the act] at some point in the future, thus causing them injury," and that they had made expenditures due to the threat of future surveillance. *Id.* at 1146.

The Supreme Court rejected the plaintiffs' theories, which rested on a "highly speculative," subjective fear of surveillance that required realization of numerous contingencies to affect the plaintiffs, including requiring the government to choose to conduct surveillance under the challenged statutory provisions. *Clapper*, 133 S. Ct. at 1148-53. "[The plaintiffs'] claim that they would suffer future harm rested on a chain of events that was both 'highly attenuated' and 'highly speculative[.]'" *Remijas*, 794 F.3d at 693 (citation omitted). "[T]here was no evidence that any of

[the plaintiffs'] communications either had been or would be monitored[.]" *Id.* (citation omitted).

Here, by contrast, Plaintiff has pled facts showing a substantial risk of future injury sufficient to establish Article III standing. The Complaint alleges HealthPort charged Plaintiff improperly on numerous occasions and establishes that HealthPort routinely services Plaintiff's requests for medical records. (*E.g.*, Compl. ¶¶ 38, 40-41.) That HealthPort will improperly charge Plaintiff again is not merely speculative; instead, there is an "objectively reasonable likelihood" that such an injury will occur. *Remijas*, 794 F.3d at 693 (quoting *Clapper*, 133 S. Ct. at 1147).

Importantly, "*Clapper* applied the imminence requirement in an 'especially rigorous' fashion given that the merits of the case would have required the Court to decide whether the [FISA Amendments Act] was unconstitutional." *Moyer v. Michaels Stores, Inc.*, No. 14 C 561, 2014 WL 3511500, at *5 (N.D. Ill. July 14, 2014) (quoting *Clapper*, 133 S. Ct. at 1147). Further, the courts "have often found a lack of standing in cases in which the Judiciary has been requested to review actions of the political branches in the fields of intelligence gathering and foreign affairs." *Clapper*, 133 S. Ct. at 1147 (citations omitted). Here, *Clapper* is also inapposite because the Complaint raises neither questions of national security nor constitutional issues.

### C.    Plaintiff Has Article III Standing to Seek Monetary Relief.

Defendant argues Plaintiff lacks standing to seek monetary relief because it has not paid any of the disputed fees. (Mot. 10.) Defendant is wrong. "Being subject to an invalid debt satisfies Article III standing requirements." *Huyer v. Wells Fargo & Co.*, 295 F.R.D. 332, 341 (S.D. Iowa 2013) (citation omitted); *accord Aho v. AmeriCredit Fin. Servs., Inc.*, 277 F.R.D. 609, 623 n.14 (S.D. Cal. 2011).[2]

---

[2] *See also Constellation Energy Commodities Grp., Inc. v. Fed. Energy Regulatory Comm'n*, 457 F.3d 14, 20 (D.C. Cir. 2006) ("[T]he increased risk of non-recovery inherent in the reduction of

*Huyer v. Wells Fargo & Co.* is on point. There, the plaintiffs, who were borrowers at the defendant banks, alleged that when they became delinquent on their mortgages, they were charged for drive-by property inspections that the defendant improperly automatically ordered. *Huyer*, 295 F.R.D. at 335, 337. The defendants argued that some of the plaintiffs (the "Castros") lacked standing because they had not suffered an injury. *Id.* at 340. The court rejected the argument, holding that the property inspection fees the defendants charged the Castros constituted an injury in fact under Article III, "regardless of whether [the Castros had] actually paid some portion of the assessed property inspection fees or [had] merely been assessed, but [were] yet to pay, such fees." *Id.* at 341. "The assessment of these property inspection fees, even if not paid, constitutes an injury-in-fact for Article III standing purposes." *Id.* at 349. Here as in *Huyer*, Plaintiff alleges Defendant has charged it numerous invalid fees. (Compl. ¶¶ 24-38.) These allegations are sufficient to establish Article III standing to seek monetary relief. *Huyer*, 295 F.R.D. at 341, 349.[3]

## II.     PLAINTIFF'S INJURIES ARE SUFFICIENT TO SUPPORT ITS CLAIMS.

Plaintiff's allegations that Defendant charged it illegal fees are sufficient to plead economic injuries in satisfaction of the actual damages requirement to state a claim under the ICFA. *Cf. Lane*

---

collateral securing a debt of uncertain amount is sufficient to support [Article III] standing."); *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 405-06 (E.D.N.Y. 2015) ("Present injurious effect on an individual's financial decisions is a cognizable injury in fact and presents a live controversy within the 'case or controversy' limitation of Article III."); *White v. Trans Union, LLC*, 462 F. Supp. 2d 1079, 1084 (C.D. Cal. 2006).

[3] Defendant cites *Siegel v. Shell Oil Co.*, 612 F.3d 932 (7th Cir. 2010), and *Owen v. General Motors Corp.*, 533 F.3d 913 (8th Cir. 2008), but those cases are inapposite. (*See* Mot. 10.) Neither opinion addresses Article III standing; instead, both opinions address whether the evidence at summary judgment established a genuine factual dispute as to causation. *Siegel*, 612 F.3d at 934, 937; *Owen*, 533 F.3d at 921-24. Plaintiff understands Defendant to be challenging whether the monetary amounts Defendant charged it suffice to establish an injury in fact and not to be challenging causation. (*See* Mot. 10.) In any event, the invalid charges do establish injury in fact, *Huyer*, 295 F.R.D. at 341, 349, and causation is met because but for Defendant's charges, Plaintiff would not have incurred the debts at issue (Compl. ¶¶ 24-38). *Regency Nissan, Inc. v. Taylor*, 391 S.E.2d 467, 471 (Ga. Ct. App. 1990), does not address standing, either. (*See* Mot. 10.)

*v. Wells Fargo Bank, N.A.*, No. C 12-04026 WHA, 2013 WL 3187410, at *11 (N.D. Cal. June 21, 2013) ("Even if a borrower has been charged but has not yet paid for the expenses, the debt is an economic injury and lien upon his property sufficient to confer standing to assert a claim under [California's] unfair competition law[.]"). Furthermore, Plaintiff has satisfied ICFA's actual damages requirement because it has expended, and continues to expend, time and money addressing the invalid fees Defendant has charged it. *See Thompson v. CACH, LLC*, No. 14 CV 0313, 2014 WL 5420137, at *8 (N.D. Ill. Oct. 24, 2014) ("[A] plaintiff's expenditure of time and money incident to defending a debt collection effort . . . suffice as damages under the ICFA."); *Grant-Hall v. Cavalry Portfolio Servs., LLC*, 856 F. Supp. 2d 929, 942 (N.D. Ill. 2012). Finally, actual damages under the ICFA include mental suffering, such as aggravation and inconvenience. *Pena v. Freedom Mortgage Team, Inc.*, No. 07 C 552, 2007 WL 3223394, at *3 (N.D. Ill. Oct. 24, 2007) (collecting cases).

Similarly, Plaintiff's allegations that Defendant charged it illegal fees are sufficient to plead satisfaction of the ascertainable loss requirement under the MMPA. *See May v. Nationstar Mortgage, LLC*, No. 4:14CV0578 TCM, 2014 WL 6607191, at *11 (E.D. Mo. Nov. 19, 2014) (holding plaintiff stated claim under MMPA and stating that plaintiff's "allegations demonstrate that she . . . suffered an ascertainable loss of money as a result of Defendant's allegedly unfair practices in trying to collect payments reportedly due from Plaintiff"). Additionally, the amounts of the debts Plaintiff purportedly owes ($22.82 for each search in connection with a request to a Missouri-based hospital) certainly are "ascertainable."[4] (Compl. ¶¶ 24-38.)

---

[4] Defendant's citations to *Siegel* and *Owen* are off point for the reasons set forth above. (*See* Mot. 11; *see supra* note 3.)

### III.    ILLINOIS AND MISSOURI LAW PROHIBIT THE CHARGES AT ISSUE.

#### A.    Illinois and Missouri Law Apply to Plaintiff's Requests.

HealthPort first argues the Illinois and Missouri statutes governing medical records requests do not apply to requests by non-patients of the facility receiving the request, asserting—without factual support—that Plaintiff's clients supposedly were never patients of the facilities at issue. (Mot. 12.) The Complaint does not allege Plaintiff's clients were not patients at the facilities to which Plaintiff sent requests. Rather, it alleges many of Plaintiff's clients do not remember *when* they received medical treatment. (Compl. ¶¶ 19-20.) It states that Plaintiff's requests were for limited time periods (*id.* ¶¶ 24, 31) and that "there were no dates of treatment of Plaintiff's client[s] at the client[s'] health care provider[s] *for the dates Plaintiff identified*" in the requests (*id.* ¶¶ 25, 32 (emphasis added)). Because Defendant's argument rests on facts not alleged in the Complaint and not otherwise properly before the Court, the Court should reject it. *PFG Precious Metals v. Perkins*, No. 10 C 6462, 2011 WL 4538697, at *4 (N.D. Ill. Sept. 27, 2011) (declining to consider arguments based on facts not properly before the court); *Labella Winnetka, Inc. v. Gen. Cas. Ins. Co.*, 259 F.R.D. 143, 148 (N.D. Ill. 2009) (same).

#### B.    Illinois and Missouri Law Do Not Authorize Charging Fees When No Records Are Copied, Retrieved, or Furnished.

HealthPort argues Illinois and Missouri law permit it to charge a fee when it does not copy, retrieve, or furnish any medical records. (Mot. 13-18.) These arguments are unfounded. As set out in the Complaint, the plain language of the Illinois statute conditions the collection of a fee on copying of medical records, 735 ILCS 5/8-2001(d), and the plain language of the Missouri statute conditions fee collection on retrieval and furnishing of medical records, MO. STAT. § 191.227.2.

Courts look to the language of the statute itself to determine its meaning. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (citation omitted); *see also Alvarez v. Pappas*,

890 N.E.2d 434, 441 (Ill. 2008). Where "the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *Ron Pair Enters., Inc.*, 489 U.S. at 241 (citation omitted). "The statutory language must be afforded its plain, ordinary, and popularly understood meaning." *Alvarez*, 890 N.E.2d at 441 (citation omitted). If the plain language is clear, the inquiry stops, and courts will not "resort to further aids of statutory construction." *Id.* (citation omitted).

Here, the Illinois statute's plain language indicates that a person requesting records "shall reimburse the facility . . . ***at the time of . . . copying*** for all reasonable expenses . . . incurred ***in connection with such copying***." 735 ILCS 5/8-2001(d) (emphasis added). Thus, the duty to reimburse is not triggered until the "time of copying," and the expenses to be reimbursed must be incurred "in connection with such copying." Without copying records, the facility is not entitled to reimbursement under the statute.

HealthPort's argument focuses on an isolated phrase of the statute—"$20 handling charge for processing the request." (*See* Mot. 13-14.) It omits the language cited above, which gives context to and defines this phrase. (*See id.*) Thus, HealthPort's argument is not consistent with the plain language of the statute. Further, contrary to Defendant's assertions, no part of the statute is superfluous. (*See* Mot. 14-15.) The provisions for shipping, postage, and copies do not cover the cost of processing the request (when there are records to be processed). Defendant's proposal to increase per-page charges instead of imposing a handling fee (Mot. 14-15) would not have the same result as the legislature's choice to impose a handling charge only when copies are made because Defendant's proposal could result in very high charges in instances where copies of large numbers of pages are requested. Finally, Defendant's cites to *Solon v. Midwest Medical Records Association, Inc.*, 925 N.E.2d 1113 (Ill. 2010), do not aid it. (*See* Mot. 13-15.) The certified question in *Solon* was whether, in cases where copies were provided, a $20 charge in accordance

with the statutory maximum was reasonable, or if, instead, a lower charge should be imposed based on actual costs. *Solon*, 925 N.E.2d at 1115-17. The court held a $20 charge was *per se* reasonable. *Id.* at 1120-21. The court did not address whether fees are proper if no copying occurs.[5]

Similarly, under Missouri law, retrieving and furnishing medical records is a prerequisite for payment of the fee. MO. STAT. § 191.227.2. The statute conditions furnishing of records on payment of the enumerated fees; however, the statute does not say that providers are entitled to fees where records are not being furnished. *Id.* This is not a "hypertechnical view" of the statute as HealthPort suggests (Mot. 16), but, rather, is in line with the statute's plain meaning. The statute contemplates payment of fees for "search and retrieval," and it unambiguously states that the fee is a precondition for receiving the records. MO. STAT. § 191.227.2. The duty to pay the fee does not arise until the provider actually "furnish[es]" the records. *Id.* If the legislature had intended for fees to be payable for a search yielding no results, it would have conditioned the search alone upon payment of the fees. It did not. The statute does not authorize fees where no records were furnished.

## IV.   THE COMPLAINT STATES CLAIMS FOR VIOLATION OF GEORGIA LAW.[6]

### A.   The Complaint States a Deceptive Trade Practices Claim Based upon Defendant's Deceptive, Illegal Conduct.

Citing *Cox v. Athens Regional Medical Center, Inc.*, 631 S.E.2d 792 (Ga. Ct. App. 2006), Defendant argues Plaintiff has failed to allege a likelihood of confusion sufficient to support a GUDTPA claim because, according to Defendant, "the charge is clear." (Mot. 18.) Defendant is wrong. Evidence of actual confusion is "not necessary to a finding of likelihood of confusion"

---

[5] *Smentek v. Sheriff of Cook County*, No. 09 C 529, 2014 WL 1379547 (N.D. Ill. Apr. 8, 2014), is also off point. (*See* Mot. 14-15.) *Smentek* dealt with an attempt to obtain records without paying the required fees. *Smentek*, 2014 WL 1379547, at *2–3.

[6] Defendant's argument based on Georgia Code section 31-33-3 (Mot. 17-18) is a red herring. Defendant does not contend section 31-33-3 governs medical record requests to doctors or hospitals in Illinois or Missouri, which are the only requests at issue.

under the GUDTPA. *Ackerman Sec. Sys., Inc. v. Design Sec. Sys., Inc.*, 412 S.E.2d 588, 589 (Ga. Ct. App. 1991). Here, Defendant presents the charge to reasonable consumers as if it is legal, when it is not, which likely confuses them. *See Bolinger v. First Multiple Listing Serv., Inc.*, 838 F. Supp. 2d 1340, 1364-65 (N.D. Ga. 2012). Also, Plaintiff may challenge unlawful and unfair conduct under the GUDTPA. *See Sprint Nextel Corp. v. Ace Wholesale, Inc.*, No. 1:12-CV-02902-JEC, 2015 WL 6957261, at *1–2 (N.D. Ga. Nov. 5, 2015) (holding unlawful enterprise involving the unauthorized and deceptive bulk purchase and resale overseas of specially-manufactured wireless telephones violated GUDTPA); *cf. Bowden v. The Med. Ctr., Inc.*, 773 S.E.2d 692, 694, 698 (Ga. 2015) (rejecting, in discovery dispute concerning relevance, the proposition that *Cox* precluded a challenge under GUDTPA to the reasonableness of charges reflected in a hospital's lien).

### B.      Choice-of-Law Principles Do Not Warrant Dismissal of the Georgia Claims

Without explaining why a conflict-of-law analysis is necessary, Defendant argues conflict-of-law principles prohibit Plaintiff from bringing statutory fraud claims under Georgia law. (Mot. 18-20.) Defendant is wrong. Even if Plaintiff cannot ultimately recover under Georgia law, Illinois law, and Missouri law,[7] Plaintiff may plead claims under different state laws as alternative theories of recovery. FED. R. CIV. P. 8(d)(2); *Kingsberry v. United States*, No. 07-CV-0118-MJR-CJP, 2010 WL 4638863, at *4 (S.D. Ill. Nov. 8, 2010). Consequently, Plaintiff is not precluded from pleading violations of Georgia law, Illinois law, and Missouri law, and the Court need not engage in a conflict-of-law analysis. *See Jou v. Kimberly-Clark Corp.*, No. C-13-03075 JSC, 2013 WL 6491158, at *11 (N.D. Cal. Dec. 10, 2013) ("[T]he Court is aware of no case that holds that an individual plaintiff, under choice of law principles applied on a Rule 12(b)(6) motion, cannot

---

[7] Plaintiff does not dispute that in the damages phase of the case, Plaintiff will not be able to obtain compensatory damages more than once.

simultaneously, or in the alternative, bring two causes of action under different states' consumer protection statutes.").

Even if the Court reaches conflict-of-law analysis, Defendant's argument nonetheless fails. According to the Supreme Court of Illinois, "a choice-of-law analysis begins by isolating the issue and defining the conflict." *Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 10 N.E.3d 902, 905 (Ill. 2014) (citations omitted). "A choice-of-law determination 'is required only when a difference in law will make a difference in the outcome.'" *Id.* (citations omitted). "The party seeking the choice-of-law determination bears the burden of demonstrating a conflict, *i.e.*, that there exists a difference in the law that will make a difference in the outcome." *Id.* (citations omitted).

Here, HealthPort has not even attempted to carry its burden of demonstrating a conflict between application of Georgia law and application of Illinois or Missouri law. (*See* Mot. 18-20.) For this reason alone, Defendant's conflict-of-law argument fails.[8] *Bridgeview Health Care Ctr., Ltd.*, 10 N.E.3d at 905, 909 (reversing lower court because lower court erroneously engaged in choice-of-law analysis). Further, there is no material conflict under the circumstances of this case.

For the foregoing reasons, the Court should reject Defendant's conflict-of-law argument.

**C.     Plaintiff May Bring Its Claim for Violation of the Georgia Fair Business Practices Act of 1975, GA. CODE § 10-1-390 *et seq.*, on a Class-wide Basis.**

The GFBPA does not preclude a class action in this case; instead, Rule 23 controls. *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010); *Lisk v. Lumber One*

---

[8] Defendant does not address due process, either. Application of GUDTPA here complies with constitutional due process principles, since HealthPort is headquartered in Georgia. *See Allstate Ins. Co. v. Hague*, 449 U.S. 302, 317-18 (1981) ("By virtue of its presence, Allstate can hardly claim unfamiliarity with the laws of the host jurisdiction and surprise that the state courts might apply forum law to litigation in which the company is involved."). (*See* Compl. ¶ 43.)

*Wood Preserving, LLC*, 792 F.3d 1331, 1334-38 (11th Cir. 2015); *In re Hydroxycut Mktg. & Sales Practices Litig.*, 299 F.R.D. 648, 652-54 (S.D. Cal. 2014) (denying motion to dismiss class claim under GFBPA because Rule 23 governs, not state law). Indeed, Judge Nancy Rosenstengel of this District recently issued an order concluding that, in accordance with the "thorough, well-reasoned opinion of the Eleventh Circuit" in *Lisk*, Rule 23 controls over similar state proscriptions on class actions. *Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239, 264 (S.D. Ill. 2015) ("It now is clear that Rule 23 controls whether a class action may be maintained, regardless of a conflicting state law.").

"Under the plain terms of the [Rules Enabling Act, 28 U.S.C. § 2072 (1934)], a federal rule applies in any federal lawsuit, and thus displaces any conflicting state provision, so long as the federal rule does not 'abridge, enlarge or modify any substantive right.'" *Lisk*, 792 F.3d at 1335 (citation omitted). In *Lisk*, the Eleventh Circuit held Rule 23 governs instead of an Alabama statute restricting consumer class actions, ALA. CODE § 8-19-10(f), because Rule 23 does not abridge, enlarge, or modify any substantive right. *Lisk*, 792 F.3d at 1334-36. Judge Rosenstengel came to the same conclusion in *Suchanek* with respect to the Alabama statute, a South Carolina statute, S.C. CODE § 39-5-140, and a Tennessee statute, TENN. CODE § 47-18-109. *Suchanek*, 311 F.R.D. at 262 n.20, 262-64. There is no meaningful distinction between the GFBPA and the statutes in *Suchanek* and *Lisk*, *see Lisk*, 792 F.3d at 1335-36; indeed, "how a state chooses to organize its statutes affects the analysis not at all," *id.* at 1336. Here, Rule 23 controls, not the GFBPA. *Id.* at 1334-36; *Suchanek*, 311 F.R.D. at 262-64.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Defendant's Motion in its entirety.[9]

---

[9] If the Court grants any part of Defendant's motion, Plaintiff hereby requests that the Court grant leave to amend. Fed. R. Civ. P. 15(a)(2); *see Foman v. Davis*, 371 U.S. 178, 182 (1962).

Date: March 17, 2016                    Respectfully submitted,

                                        By:  /s/ Michael R. Reese
                                             Michael R. Reese
                                             *mreese@reesellp.com*
                                             George V. Granade
                                             *ggranade@reesellp.com*
                                             **REESE LLP**
                                             100 West 93rd Street, 16th Floor
                                             New York, New York  10025
                                             Telephone: (212) 643-0500
                                             Facsimile: (212) 253-4272

                                             Melissa W. Wolchansky
                                             *wolchansky@halunenlaw.com*
                                             **HALUNEN LAW**
                                             1650 IDS Center
                                             80 South Eighth Street
                                             Minneapolis, Minnesota  55402
                                             Telephone: (612) 605-4098
                                             Facsimile: (612) 605-4099

                                             Brian T. Kreisler, ARDC #06283303
                                             *brian@kreislerlawfirm.com*
                                             **THE KREISLER LAW FIRM LLC**
                                             Post Office Box 1353
                                             O'Fallon, Illinois  62269
                                             Telephone: (618) 589-2165
                                             Facsimile: (618) 632-5095

                                             *Counsel for Plaintiff and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 17, 2016, I caused a true and correct copy of the foregoing document to be filed electronically using the Court's CM/ECF system, which will serve notice upon all counsel of record.


By:  */s/ Michael R. Reese*_____
     Michael R. Reese