IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LAW OFFICE OF BRENT GAINES, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) Case No. 16-CV-00030-SMY-SCW |
| vs. | ) ) ) |
| HEALTHPORT TECHNOLOGIES, LLC. | ) ) |
| Defendant. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Healthport Technologies, LLC's ("Healthport") motion to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Doc. 8). Healthport argues that Plaintiff lacks standing, that its settlement offer renders Plaintiff's claims moot, and that because the conduct complained of is not unlawful, it cannot support a claim under the statutes asserted by Plaintiff. Plaintiff opposes the motion (Doc. 16). For the following reasons, the motion is **GRANTED**.

### Background

Defendant Healthport manages medical record requests for healthcare providers. It is an LLC with its principal place of business of Georgia and its sole member is a Delaware corporation. Plaintiff is a law firm that represents clients seeking Social Security benefits. It is located in Belleville, Illinois.

The nature of Plaintiff's work requires that it obtain its clients' medical records. Occasionally, a client believes, but is not certain, that he/she was treated by a particular provider. In the interest of due diligence, Plaintiff sends medical records requests to these facilities in order

to determine whether they treated the client. Plaintiff sent such requests to two of Healthport's clients, one in Illinois and one in Missouri. In both instances, Healthport informed Plaintiff that it had found no record of treatment and presented a bill for what it called a "Basic Fee." (1-1 at 5-6).

Plaintiff filed a four Count class action lawsuit in the Circuit Court of St. Clair County, Illinois, alleging that Healthport's Basic Fees violated Illinois and Missouri's medical records release statutes and consumer protection statutes in those states and Georgia. The putative class is comprised of Missouri and Illinois attorneys and law firms who were charged Healthport's Basic Fee when no records were provided. Healthport removed the case to this Court under 28 U.S.C. § 1332(d).

## Discussion

### F.R.C.P. 12(b)(1) – Subject Matter Jurisdiction

After Plaintiff filed its Complaint in this matter, Healthport made an offer to settle Plaintiff's claims. Plaintiff did not accept the offer (Doc. 8 at 4-5). Healthport now argues that subject matter jurisdiction is lacking because the settlement offer mooted Plaintiff's case in regards to any previously assessed charges and because Plaintiff lacks standing to seek injunctive relief or to recover money damages (Doc. 8). "When evaluating a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court should use *Twombly–Iqbal's* 'plausibility' requirement, which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)." *Id.* at 174.

The Seventh Circuit has explained the requirements for Article III standing as follows:

> To establish Article III standing, 'a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that

the injury will be redressed by a favorable decision. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015).

Here, Plaintiff claims that it has been charged an illegal fee and that it is entitled to monetary damages and injunctive relief to ensure that the problem does not continue.

Standing to seek injunctive relief requires only "a reasonable probability of imminent, tangible harm." *Taylor v. Stewart*, 479 Fed. App'x 10, 13 (7th Cir. 2012) (internal citations and quotations omitted); *accord Slapper v. Amnesty Int'l, USA*, 133 S.Ct. 1138, 1160-1161 (2013) (collecting cases with varying articulations of standard, including "reasonable probability"). On the one hand, Healthport argues there is an insufficient likelihood of a subsequent, similar injury. At the same time however, it complains of Plaintiff frequently engaging in a practice not uncommon within the plaintiff bar, has offered a settlement and release that applies only to previous, but not prospective charges, and admits no wrongdoing. Under these facts, coupled with Plaintiff's allegations, it is plausible, if not likely that this situation will present itself again. Therefore, Plaintiff has standing to seek injunctive relief.

Regarding money damages, the fact that Plaintiff has not paid the disputed fees does not foreclose a finding that it has suffered an injury that may justify the award of money damages. While Healthport might well be correct that none of the statutes under which Plaintiff makes its claims allow for damages, that is not a challenge to subject-matter jurisdiction, but rather the basis for a Rule 12(b)(6) dismissal.[1] Under Rule 12(b)(1), the question is whether an allegedly invalid, uncollected debt can serve as the basis for standing to sue for damages. Several courts have answered this question in the affirmative. *See, e.g., Huyer v. Wells Fargo & Co.*, 295 F.R.D. 332, 341 (S.D. Iowa 2013) ("Being subject to an invalid debt satisfies Article III standing requirements.") (*quoting Aho v. AmeriCredit Fin. Servs., Inc.*, 277 F.R.D. 609, 623 n.14 (S.D.

---

[1] For reasons later set forth in this Order, the Court finds it unnecessary to address Defendant's argument on this issue.

Cal. 2011)). Consistent with these decisions, this Court finds Healthport's assessment of "Basic Fees," even if unpaid, amounts to an injury-in-fact for purposes of Article III standing.

Next, Healthport contends that Plaintiff's case is moot because it made an offer to settle. The Supreme Court recently addressed this issue in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016). In rejecting Petitioner Campbell-Ewald Co.'s argument that its offer of judgment to Respondent Gomez mooted the case, the Supreme Court held:

> Under basic principles of contract law, Campbell's settlement bid and Rule 68 offer of judgment, once rejected, had no continuing efficacy. See *Genesis Healthcare,* 569 U.S., at ——, 133 S.Ct., at 1533 (KAGAN, J., dissenting). Absent Gomez's acceptance, Campbell's settlement offer remained only a proposal, binding neither Campbell nor Gomez. See App. to Pet. for Cert. 59a ("Please advise whether Mr. Gomez will accept [Campbell's] offer...."). Having rejected Campbell's settlement bid, and given Campbell's continuing denial of liability, Gomez gained no entitlement to the relief Campbell previously offered. See *Eliason v. Henshaw,* 4 Wheat. 225, 228, 4 L.Ed. 556 (1819) ("It is an undeniable principle of the law of contracts, that an offer of a bargain by one person to another, imposes no obligation upon the former, until it is accepted by the latter...."). In short, with no settlement offer still operative, the parties remained adverse; both retained the same stake in the litigation they had at the outset.
>
> \*\*\*
>
> [W]hen the settlement offer Campbell extended to Gomez expired, Gomez remained emptyhanded; his TCPA complaint, which Campbell opposed on the merits, stood wholly unsatisfied. Because Gomez's individual claim was not made moot by the expired settlement offer, that claim would retain vitality during the time involved in determining whether the case could proceed on behalf of a class. While a class lacks independent status until certified, see *Sosna v. Iowa,* 419 U.S. 393, 399, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), a would-be class representative with a live claim of her own must be accorded a fair opportunity to show that certification is warranted.

*Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 670–72 (2016).

The Supreme Court's rationale applies to the instant facts. The Release Healthport offered does not admit fault, does not require it to pay any damages, and does not waive the challenged fees prospectively (in general or as to Plaintiff) (Doc. 8-1). As a unilateral Release, it

does not have the force of a contract. It does not grant Plaintiff full relief and therefore cannot moot Plaintiff's claims. See, *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726–27 (2013) ("A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'").

For these reasons, Healthport is not entitled to dismissal for lack of subject matter jurisdiction.

### F.R.C.P. 12(b)(6) – Failure to State a Claim

In order to state a claim upon which relief may be granted, a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that when "accepted as true ... state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937.

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all facts alleged in the Complaint and construes all reasonable inferences in favor of the plaintiff. *Savory v. Lyons,* 469 F.3d 667, 670 (7th Cir. 2006). Healthport advances three arguments in support of Rule 12(b)(6) dismissal: (1) that the Illinois and Missouri records statutes at issue confer upon it the right to collect a fee for searches that do not turn up records; (2) that choice of

law considerations prevent the application of Georgia law; and (3) that the Georgia law under which Plaintiff wishes to proceed does not provide a grounds for relief.

### First and Second Causes of Action – Violations of Georgia's Uniform Deceptive Trade Practices Act and Fair Business Practices Act of 1975

Plaintiff's First and Second causes of action assert violations of two Georgia consumer protection statutes – "Georgia's Uniform Deceptive Trade Practices Act" and "Georgia's Fair Business Practices Act of 1975." In the context of consumer protection law violations, "the injury is decidedly where the *consumer* is located, rather than where the seller maintains its headquarters." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1017 (7th Cir. 2002). Because the injuries alleged in Plaintiff's Complaint, occurred in Illinois and Missouri, It would be improper to apply Georgia law. Therefore, the claims asserted in Plaintiff's First and Second causes of action must be dismissed.

### Third and Fourth Causes of Action – Violations of Illinois Consumer Fraud and Deceptive Practices Act and Missouri Merchandising Practices Act

Plaintiff's case is premised on the proposition that both Illinois' and Missouri's medical records request laws prohibit Healthport from charging a fee for requests that do not actual result in the production of medical records. As such, in deciding the present motion, the Court must review and interpret the statutes in question to determine whether Plaintiff has or can state viable claims under the ICFA and/or the MMPA.

With respect to the interpretation of Illinois statutes, the Seventh Circuit has observed:

According to the Illinois Supreme Court, "[t]he primary rule of statutory construction is to ascertain and give effect to the intent of the legislature." *People v. Donoho,* 204 Ill.2d 159, 273 Ill.Dec. 116, 788 N.E.2d 707, 715 (2003). The best evidence of that intent is the language of the statute. *Id.* When possible, the Supreme Court of Illinois will "interpret the statute according to the plain and ordinary meaning of the language." *Id.* It will also consider the law's purpose. *Id.* If the statute is "subject to two or more reasonable interpretations," the Illinois

Supreme Court will resort to interpretive aids. *Adams v. Catrambone*, 359 F.3d 858, 862 (7th Cir. 2004).

Missouri employs a similar approach to statutory construction. *See United Pharmacal Co. of Missouri v. Missouri Bd. of Pharmacy*, 208 S.W.3d 907, 909 (Mo. 2006) ("The goal of statutory analysis is to ascertain the intent of the legislature, as expressed in the words of the statute.").

735 Ill. Comp. Stat. Ann. 5/8-2001(d), which governs the request for records, states in relevant part:

> A request for copies of the records shall be in writing and shall be delivered to the administrator or manager of such health care facility or to the health care practitioner. The person (including patients, health care practitioners and attorneys) requesting copies of records shall reimburse the facility or the health care practitioner at the time of such copying for all reasonable expenses, including the costs of independent copy service companies, incurred in connection with such copying not to exceed a $20 handling charge for processing the request and the actual postage or shipping charge, if any, plus:
>
> (1) for paper copies 75 cents per page for the first through 25th pages, 50 cents per page for the 26th through 50th pages, and 25 cents per page for all pages in excess of 50 (except that the charge shall not exceed $1.25 per page for any copies made from microfiche or microfilm; records retrieved from scanning, digital imaging, electronic information or other digital format do not qualify as microfiche or microfilm retrieval for purposes of calculating charges)...

Missouri's statute provides:

> 2. Health care providers may condition the furnishing of the patient's health care records to the patient, the patient's authorized representative or any other person or entity authorized by law to obtain or reproduce such records upon payment of a fee for:
>
> (1)(a) Search and retrieval, in an amount not more than twenty-two dollars and eighty-two cents plus copying in the amount of fifty-three cents per page for the cost of supplies and labor plus, if the health care provider has contracted for off-site records storage and management, any additional labor costs of outside storage retrieval, not to exceed twenty-one dollars and thirty-six cents, as adjusted annually pursuant to subsection 5 of this section;
>
> Mo. Ann. Stat. § 191.227 (West)

Healthport contends that because the statutes only apply to those who have actually been treated by a given medical facility, they do not govern requests "on behalf of clients who were never patients of the medical facility." (Doc. 8 at 12). It also argues that, if the statutes *do* apply to such requests, they allow for the charging of a handling/search fee, and that a contrary reading would both countervene the language of the statutes and unfairly burden medical records providers who receive protective requests. Plaintiff argues that the plain language of both statutes limits a handling fee to instances in which medical records are actually provided.[2]

Neither statute speaks as clearly on this issue as either side suggests. The language in the Illinois statute, "in connection with such copying," may be read to suggest that a charge is only appropriate when actual copying takes place as Plaintiff argues. However, the statute also explicitly authorizes a "handling charge for processing the request" which is followed by a fee schedule of charges for instances in which records actually are provided. This disaggregation suggests a legislative intent to allow compensation for merely taking a request as well as compensation for fulfilling it. As the Illinois Senate sponsor of the law stated, "[I]t basically sets up a sliding scale of copying charges and an initial fee that you have to pay, a handling charge of [$20]." *Solon v. Midwest Med. Records Ass'n, Inc.*, 236 Ill. 2d 433, 444, 925 N.E.2d 1113, 1119 (2010) (quoting 92d Ill. Gen. Assem., Senate Proceedings, April 5, 2001, at 226–27 (statements of Senator John Cullerton)).

The Court is also persuaded that an opposite ruling would lead to an unreasonable result. Holding that the statute does not apply to fruitless searches might allow records providers to charge *any* price they choose for requests that do not result in the provision of records.

---

[2] Plaintiff also argues that Defendant's motion misrepresents Plaintiff's factual claims—namely, that Defendant suggests the subjects of the records were never patients of the relevant facilities, despite the fact that the Complaint merely states that they were not patients at the time set forth in the requests (Doc. 16 at 15). However, the applicability of the statutes is the same in either case, and the Court does not find it necessary to resolve this issue.

Similarly, holding that the statute applies to such requests, but prohibits a charge, would unfairly place the burden of finding out where a patient received treatment on records providers without compensating them – they would be forced to do the work they normally are paid to undertake for free. As such, the Court concludes that Illinois' medical records statute applies to a request for medical records and allows for an initial handling fee, even when no record is furnished.

The Court reaches the same conclusion as to Missouri's statute. Similar to the Illinois statute, it both authorizes a flat charge and sets forth what may be charged for each page of records; creating a reasonable inference of an intent to allow this charge as an initial fee for processing the request. The policy considerations bearing on the Court's interpretation of Illinois' statute are also relevant to Missouri's statute. A contrary finding would unfairly burden health care providers and the companies that maintain their records and potentially result in there being no restrictions on what a records provider can charge if a request does not result in the production of records. Although the statute characterizes the fee as one for "search and retrieval," based on the considerations discussed above, the Court does not find the language to mean that fees may only be imposed when a record is searched for *and* provided.

## Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. 8) is granted pursuant to *F.R.C.P.* 12(b)(6) and this action is **DISMISSED** with prejudice. The Clerk of Court is **DIRECTED** to enter judgment accordingly and to close this case.

**IT IS SO ORDERED.**

**DATED: May 2, 2018**

**s/ Staci M. Yandle**
**STACI M. YANDLE**
**United States District Judge**
